UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

ELI LILLY AND COMPANY, )
)
Plaintiff, )
)
v. ) No. 1:25-cv-00664-TWP-TAB
)
PREMIER WEIGHT LOSS OF INDIANA, LLC )
D/B/A PREMIER WEIGHT LOSS, et al., )
)
Defendants. )

**ORDER ON THE PWL DEFENDANTS'
MOTION TO COMPEL**

**I.      Introduction**

Defendants Premier Weight Loss of Indiana, LLC and Premier Weight Loss Management, LLC (collectively, PWL) request that the Court compel Plaintiff Eli Lilly and Company to provide full and complete discovery, require a transparent and meaningful ESI process, and award PWL its reasonable expenses and attorneys' fees incurred in bringing this motion.  [Filing No. 71.]  The Court has reviewed the requests and objections raised.  Overall, it appears the parties have a good faith dispute over the scope of some requests, for which the Court has attempted to narrow and provide guidance.  Thus, no award of expenses or attorneys' fees is warranted.  For the reasons set forth below, PWL's motion is granted in part and denied in part.

**II.    Background**

Lilly initiated this lawsuit against PWL on April 7, 2025, asserting claims under the Lanham Act and Indiana law for trademark infringement and false advertising.  [Filing No. 1.]  In response, PWL filed an answer and counterclaim.  [Filing Nos. 33 and 34.]  Lilly moved to dismiss PWL's counterclaim, which the Court granted in part and denied in part.  [Filing Nos. 37 and 60.]  The Court granted Lilly's motion as to Count II for injunctive relief in its entirety and as to Count I, defamation and defamation *per se*, for PWL's asserted statements #1 (Lilly calling PWL an "illegal actor") and #3 (Lilly alleging that PWL breaks apart or cracks open Lilly's medicines).  Thus, those counterclaims were dismissed.  The Court denied Lilly's motion to dismiss as it related to Count I, asserted statement #2—that PWL's illegal repackaging puts patients' lives at risk.  [Filing No. 60, at ECF p. 20.]

On December 5, 2025, PWL served interrogatories and requests for production on Lilly.  Lilly timely answered on January 19, 2026, and produced an initial tranche of documents eight days later.  As of January 27, 2026, Lilly had produced only 190 documents.  On January 28, 2026, PWL had a telephone conference with Lilly, during which PWL expressed concern about the limited document production and requested a meet and confer.  The parties conferred on February 4, 2026, with additional written communications exchanged between February 6-16, 2026.  The Court held a status conference on February 17, 2026, and then entered an order requiring Lilly to supplement its discovery responses by February 20, 2026.  [Filing No. 68.]

Lilly served supplemental discovery responses on February 20, 2026, and indicated that it "anticipate[d] beginning rolling productions of responsive, non-privileged documents later [that] week."  [Filing No. 81-1, at ECF p. 2.]  PWL contacted the Court on February 24, 2026, and requested a discovery conference.  Since the Court had already attempted to resolve some of the

2

issues with the parties, the Court stated that PWL could file a motion to compel if the parties could not resolve the issues.  Lilly produced another 38 documents on February 27, 2026.  PWL alleges that it attempted to narrow the issues once again via telephone and email on March 2 and 3, 2026.  Lilly claims it made it clear that additional documents were coming based on Lilly's supplemental responses.  Nonetheless, because PWL felt that Lilly still had not produced all responsive information, PWL filed the pending motion to compel on March 3.  [Filing No. 71.]

Lilly claims several issues raised in PWL's motion are now moot after supplemental production from Lilly since the filing of the motion.  [Filing No. 81, at ECF p. 6-7.]  PWL acknowledged Lilly's supplemental production in its reply brief but indicated that many issues remain in dispute.  [Filing No. 87.]  Thus, on May 5, 2026, the Court directed the parties to file a joint statement identifying the resolved and remaining discovery disputes.  [Filing No. 92.]  On May 19, 2026, the parties filed a joint statement.  [Filing No. 95.]  While the statement clarifies some aspects of the remaining disputes, it predominantly reveals ongoing disagreement between the parties over the very parameters of the disagreement.  The Court addresses the remaining disputes as fully as possible, despite the unclear response.

**III.    Discussion**

PWL says Lilly has refused to meaningfully reciprocate with discovery request responses, producing a disproportionately smaller amount of documents,[1] many of which are not relevant to Lilly's claims or PWL's defenses and counterclaim; systematically withheld the identities of PWL patients it has interviewed even though they are the very individuals Lilly

---

[1] PWL's opening brief states Lilly has produced only 228 documents.  [Filing No. 72, at ECF p. 1.]  PWL's reply clarifies that Lilly produced an additional 31 documents—bring the total produced by Lilly to 259, while PWL has produced over 6,000 documents.  [Filing No. 87, at ECF p. 4.]  However, the phrase "documents" is vague as to the volume of the material produced.

claims were confused or misled; failed to produce its internal investigative files and internal communications about PWL and these witnesses; and used the ESI process as a shield by refusing to collaborate on custodians and search terms as required by the parties' agreed ESI protocol.  The parties agree that Lilly has provided internal investigation documents and pre-suit media communications, so those issues no longer require Court action, except as identified below.  [Filing No. 95, at ECF p. 1-2.]  However, multiple categories of unresolved disputes remain, which the Court addresses in the following subsections.

A.    **Identity of PWL patients Lilly has spoken with about PWL and the information obtained (Interrogatory Nos. 2 and 5; RFP No. 6)**

PWL argues that Lilly's complaint makes clear that Lilly has spoken with PWL's patients about PWL's medical practice.  Thus, in Interrogatory No. 2, PWL asked Lilly to identify "all person(s) who are or have been a patient or prospective patient of PWL who You have communicated with about PWL and describe the information obtained."  [Filing No. 72-1, at ECF p. 7.]  Relatedly, Interrogatory No. 5 requests that Lilly identify all persons or entities that Lilly contends were misled, deceived, or confused by PWL.  [Filing No. 72-1, at ECF p. 10.]

In response, Lilly admitted that it "has received communications from Defendants' patients and/or prospective patients expressing concern regarding Defendants' practice" but refused to provide those patient names "[o]ut of concern for patient privacy rights."  [Filing No. 72-1, at ECF p. 7.]  On February 17, 2026, the parties participated in a telephonic status conference with the Court regarding settlement and discovery.  PWL previewed this issue at that conference, and while the Court did not issue an explicit ruling on the underlying dispute at that time, the Court did direct Lilly to supplement its discovery responses.  [Filing No. 68.]  Nevertheless, Lilly continues to refuse to identify the patients.

Lilly acknowledges that it has produced nonprivileged documents regarding complaints it received about PWL, but it has redacted the patient names in those documents.  Lilly argues that PWL has taken the exact same position with respect to patient privacy and indicates it will only provide the patient identities if PWL will do the same with respect to third parties that have contacted PWL regarding the authenticity of PWL's compounded drugs.  However, the only issue that is currently before the Court for a ruling is whether *Lilly* must disclose the identities of PWL patients who have spoken with Lilly about PWL or provided PWL drugs to Lilly for testing.

Lilly argues there is good reason to redact patient names from the documents it has produced.  Lilly says the fact that it has received communication about PWL's products is relevant, but not the identity of the complainant.  Lilly claims PWL has not explained why additional identification information is relevant and accuses PWL of intending to harass these third parties.  PWL responds that the identities of these witnesses are highly relevant, because the witnesses have knowledge of information provided by both PWL and Lilly about the drugs PWL prescribes.  Thus, PWL claims it is entitled to know their identities and the substance of any communications they had with Lilly.  Relatedly, PWL argues it is also entitled to know what Lilly told those patients before, during, and after it tested the MOUNJARO and/or ZEPBOUND the patients allegedly obtained from PWL.  Further, PWL argues it is entitled to discovery on whether and to what extent these patients were confused, why they were confused, and who contributed to their confusion.

The Court agrees with PWL.  Lilly anchored the factual basis of a portion of this lawsuit on these patient communications.  Lilly cannot now withhold their identities or otherwise prevent PWL from obtaining related discovery.  Accordingly, Lilly's objections to Interrogatory Nos. 2 and 5 are overruled.  Lilly must provide PWL with the identities of patients Lilly has spoken

with about PWL and the information obtained; the identities of individuals Lilly contends were misled, deceived, or confused; and any related supporting facts. Lilly must supplement its responses to these interrogatories, as well as Request for Production No. 6, to address this issue, subject to the protective order already in place in this case.

**B.    Internal Lilly communications relating to PWL and its patients (Interrogatory No. 2; RFP Nos. 2, 4, 5, 6, 7) and Lilly's internal investigation into PWL, including lab notebooks and internal correspondence (Interrogatory No. 3; RFP No. 6)**

PWL also seeks all documents related to Lilly's investigation into PWL, including lab notebooks and internal correspondence. The parties indicate that there has been some resolution of this dispute in relation to the production of Lilly's internal investigation documents. [Filing No. 95, at ECF p. 1.] To the extent that Lilly has not produced all non-privileged, relevant internal investigative files, lab notebooks, and internal communications about PWL and these witnesses—and disclosed patient identities within those communications—it must do so.

**C.    When Lilly first learned about PWL (Interrogatory No. 3)**

PWL seeks information about when Lilly first learned about PWL's medical practice and the allegations in the complaint in response to Interrogatory No. 3. Lilly argues that this information is not relevant, requires an overburdensome attempt to interview employees and find out when they first learned about PWL. Instead, Lilly responded with December 11, 2024, the date that Lilly's internal investigation was complete. Lilly says this is the date Lilly was put on notice of PWL's conduct. To some extent, Lilly's burdensome argument falls flat, since Lilly also claims only a handful of Lilly employees know about PWL. However, even more important, PWL never explains in any of its briefing *why* the date Lilly first learned of PWL matters. Thus, Lilly's relevance objection to this portion of Interrogatory No. 3 is sustained.

**D.       Adverse events associated with PWL's patients or conduct (Interrogatory No. 10) or with Lilly's autoinjectors and vials (RFP Nos. 10-11)**

PWL argues it is entitled to discovery on Lilly's allegation that PWL "puts patient lives at risk."  Thus, PWL requests in Interrogatory No. 10 that Lilly identify "any adverse events, injuries, or other consumer complaints that [Lilly contends] are attributable to Defendants' conduct and for each instance, provide all information you possess about those events or injuries."  [Filing No. 72-1, at ECF p. 16.]  In response, Lilly said it would produce documents "sufficient to show that repackaging drug products carries an inherent risk[.]"  [Filing No. 72-1, at ECF p. 17.].  In a supplemental answer, Lilly added that it "will produce non-privileged documents sufficient to show complaints that Lilly has received from patients or prospective patients of PWL."  [Filing No. 72-7, at ECF p. 23.].  As of March 3, 2026, PWL indicated that Lilly had not produced any such documents.

PWL argues that if Lilly intends to present evidence regarding adverse events from PWL patients, justice requires that PWL access comparative adverse event data from Lilly application methods.  To do that, PWL needs information regarding adverse events caused by Lilly's autoinjector pens and Lilly's vial products.  Accordingly, PWL served two related requests for production—Requests for Production Nos. 10 and 11—to which Lilly had not produced responsive documents as of the time of PWL's motion to compel.  These requests seek all documents, complaints, adverse event reports, or information regarding any individual that was potentially harmed by MOUNJARO and/or ZEPBOUND administered via an autoinjector pen (RFP No. 10) or provided in a vial form and administered via syringe (RFP No. 11).  PWL argues that Lilly is required to maintain adverse event reports in the normal course of business under federal law and that these are routinely produced in pharmaceutical litigation, so Lilly should do so here.

7

Lilly argues that comparative adverse event dara from Lilly application methods is irrelevant, because the questions in this case are whether PWL deceives patients about whether its counterfeit repackaged Tirzepatide products are genuine Lilly medicines and whether PWL's compounding puts patients' lives at risk. Lilly says adverse events related to genuine Lilly medicines have no bearing on either question, so PWL is not entitled to any production. Lilly further claims it has repeatedly informed PWL that these documents are already publicly available. Regardless, and without waiving its objection, Lilly indicates it has already produced information regarding reported adverse events to PWL on February 27. Thus, Lilly argues that this issue is moot.

PWL's reply brief does not explicitly address whether PWL still seeks document production or interrogatory responses regarding adverse events related to genuine Lilly products. PWL acknowledges in its reply brief that Lilly did produce "a handful of spreadsheets" showing hundreds of thousands of adverse events related to MOUNJARO and ZEPBOUND generally. However, PWL argues that Lilly has still not identified adverse events, injuries, or other consumer complaints that Lilly contends are attributable to PWL's conduct. [Filing No. 87, at ECF p. 11.]. Thus, PWL requests that this Court order Lilly to provide a verified interrogatory answer identifying each specific adverse event Lilly attributes to PWL.

To the extent that outstanding production remains as to any of these requests, the Court finds the requests to be reasonable and relevant. Lilly must provide a verified interrogatory answer identifying each specific adverse event Lilly attributes to PWL in support of its claim that PWL puts patient lives at risk. If Lilly is unaware of any such adverse events, it should state as much. Similarly, if Lilly has any outstanding materials regarding adverse events related to Lilly's autoinjector and vials, it must produce those materials and respond fully to that request as well.

The parties' joint statement of resolved and remaining discovery disputes indicates that disputes also remain as to Lilly's production of documents in response to RFP Nos. 8, 9, and 24 supporting Lilly's allegation that PWL "puts patient lives at risk."  [Filing No. 95, at ECF p. 2.] To the extent that Lilly has not provided all documents, complaints, adverse event reports, or other information supporting this allegation, it must do so.

E.      **Documents reflecting pre-complaint media outreach by Lilly (RFP No. 30; Interrogatory No. 15)**

PWL served a request on Lilly, Interrogatory No. 15, seeking the identity of all persons or entities to whom Lilly provided or disclosed the allegations contained in the complaint or otherwise notified regarding Lilly's plan to file a complaint against PWL prior to filing on April 7, 2025.  [Filing No 72-1, at ECF p. 21.]  Lilly agreed to produce all communications it had with the media before filing this lawsuit and said those documents would be forthcoming.  On March 16, 2026, Lilly supplemented its original responses and provided documents reflecting pre-suit media communications.

PWL and Lilly seemingly agree that this issue is resolved, except in relation to PWL's request that Lilly provide complete supplemental, verified interrogatory answers and, where appropriate, state that Lilly does not possess certain evidence or that all such evidence in Lilly's possession has already been produced.  To the extent that any dispute remains, the Court finds this request reasonable, as it seeks relevant and proportional discovery and does not seek confidential communications.  If Lilly has not provided a complete, verified response or produced all evidence in Lilly's possession that is responsive to this request, Lilly must do so.

**F.**      **Lilly's allegation that PWL "breaks" or "cracks" open autoinjectors (RFP No. 15)**

In support of its Lanham Act claims, Lilly alleges that PWL "cracks" or "breaks" open Lilly autoinjectors.  Accordingly, PWL served Request for Production No. 15 on Lilly, which seeks "[a]ll documents supporting your allegation that PWL is 'cracking open' Lilly's single-use auto-injector pens or vials."  [Filing No. 72-2, at ECF p. 18.]  In response, Lilly objected because the Court dismissed this allegation from PWL's defamation counterclaim.  [Filing No. 72-8, at ECF p. 20.]  Indeed, on December 31, 2025, this Court dismissed PWL's defamation counterclaim to the extent it concerned Lilly's allegation that PWL breaks apart or cracks open Lilly's medicines.  The Court wrote:

> PWL alleges that it "dispenses" Lilly's products into third-party syringes and sells them as Mounjaro® and Zepbound® (Filing No. 34 at 7 ¶31; Filing No. 33 at 25 ¶56). This admission supports Lilly's assertion that PWL breaks apart or cracks open Lilly's autoinjector pens. While PWL takes issue with the use of the verbiage "breaks apart" or "cracks open," such language is synonymous with PWL's admission of "repackag[ing]" Lilly's autoinjector pens into third-party insulin syringes. Accordingly, the "gist" or "sting" of Lilly's statement is true, and thus, Lilly's truthfulness defense is successful for Asserted Statement #3.

[Filing No. 60, at ECF p. 9.]

However, PWL argues that since Lilly included this allegation in its complaint in support of its Lanham Act claims, PWL is entitled to conduct discovery on it, regardless of the Court's ruling on PWL's counterclaim.  [Filing No. 72, at ECF p. 11.]  The Court agrees.  While the Court discussed the Lanham Act when evaluating Lilly's truthfulness defense, it merely concluded that based on the pleadings, PWL's prescribing practices "plausibly" violate the Lanham Act.  [Filing No. 60, at ECF p. 13).]  Lilly argues PWL already has information on how it removes medicine from its original container in its possession, custody, and control.  But PWL

10

is also permitted to discover any evidence *Lilly* has that PWL patients were actually harmed or confused by the method PWL prescribes and uses the medications with their patients.

Moreover, five claims remain intact and subject to discovery: Lilly's four claims, PWL's defamation counterclaim, and each party's respective defenses.  PWL is entitled to conduct discovery on these claims and defenses.  Lilly asserts it has already produced all non-privileged documents in its possession relating to its pre-suit understanding of PWL's repackaging efforts.  However, Lilly's supplemental response to Request for Production No. 15 indicates that Lilly refused to produce documents in response to this request beyond what it has produced in response to requests related to the one statement in PWL's counterclaim that remains part of this case.  Lilly should not be so limiting, and must provide a supplemental, verified response address the full scope of this request.

**G.      Supplemental, verified interrogatory answers that are complete and where appropriate, state that Lilly does not possess certain evidence or that all such evidence in Lilly's possession has already been produced.**

PWL claims that Lilly's belated production of 31 responsive documents was not accompanied by supplemental verified interrogatory answers or document production responsive to Interrogatory Nos. 2 or 5 or Requests for Production Nos. 2, 4, 5, 6, 7, 15, or 30.  As noted throughout this order: to the extent that Lilly did not provide supplemental verified interrogatory answers to these interrogatories or responsive documents to the extent that this order indicates they should have been produced, Lilly must do so.

**H.      Custodians, Search Terms, and Hit Reports**

Finally, the parties devote much time and briefing to disputes over custodians, search terms, and hit reports.  PWL accuses Lilly of refusing to cooperate in determining proper custodians and search terms, while Lilly calls PWL's search demands unreasonable.   Lilly says it

initially identified three Lilly employees with knowledge of facts relevant and PWL served deposition notices for all three.  As of March 3, 2026, when PWL filed its motion to compel, Lilly had limited its search to five custodians selected by Lilly: Fernando Campo, Janet Potts, Terence Milton, Tom Hite, and Jared Shapiro.  Lilly claims it has searched the files of these five custodians and made manual collections from two additional custodians as well as non-custodial sources, including corporate documents (such as press releases) and publicly available documents (such as FDA guidance reports).  However, PWL argues that these custodians had few responsive documents, as reflected in a chart in PWL's motion to compel.  [Filing No. 72, at ECF p. 14.]

PWL takes issue with the fact that Lilly had not searched the custodial files of other individuals disclosed in Lilly's February 20, 2026, supplemental interrogatory answers, including Michael Dalton and Christian Hertenstein.  Dalton is a Director of Laboratory operations and Pharmaceutical Investigations at Lilly.  Hertenstein is the individual who sent Lilly's complaint to news agencies.  PWL also requested that Lilly add custodians who have spoken with a PWL patient.  Finally, PWL takes issue with the fact that Lilly refuses to search the custodial file of its CEO, David Ricks.

Lilly argues that PWL's requests for additional custodians and searches are not proportional to the needs of the case.  Lilly takes issue with the fact that PWL demands Lilly identify additional custodians, including Ricks, without any basis to say they will have relevant information.  The Court previously addressed Ricks in the context of a request for his deposition. The Court sustained Lilly's objection to that request.  In this context, PWL asks Lilly to search the custodial file of Ricks, but the request is once again based on a 2024 quote from Ricks saying, "We send letters to people and threaten them.  We can challenge the physicians who are

12

doing the prescribing." [Filing No. 72, at ECF p. 14.] This quote, re-stated in an article in February 2026, has no direct connection to this case, which does not involve sending a demand letter to PWL before filing suit or challenging PWL's physicians "who are doing the prescribing." While PWL's request for a custodial search of documents is different than the request to require Ricks to sit for a deposition, PWL still has not set forth any convincing justification or basis for a search of Ricks' custodial file at this juncture. A reference to a quote on a different topic does not suggest Ricks will have any documents responsive to the issues in this litigation. By way of emphasis, Lilly indicates Ricks has no unique, relevant knowledge, documents, or communications, and is therefore not a proper target for discovery.

Nevertheless, Lilly has been overly restrictive in response to PWL's request to expand the custodial search in this matter. On March 27, 2026, PWL provided Lilly with a new list of custodians, including Dalton, Hertenstein, 17 individuals appearing in Lilly's investigative files as custodians, and one additional custodian that appears in other Lilly internal correspondence about PWL. Lilly agreed to run Dalton and the original five custodians if PWL would withdraw its motion to compel. PWL now indicates it prefers its new custodians be searched with Dalton before the five previously identified by Lilly. Yet Lilly has steadfastly refused to add any of PWL's new custodians to its search.

Generally, the Court prefers that the parties work together to agree on custodians (and search terms, as explained in more detail below). However, the Court provides the following general guidance to aid the parties. Lilly's initial search of five custodians is too limited, but PWL's more recent request to search 21 additional custodians casts too wide a net. Lilly's conclusory and unsupported statements are insufficient. Lilly needs to expand its search—just

not as wide as PWL requests.  Thus, the parties are directed to confer and find a compromise on 10-15 total custodians.

For instance, it appears that the parties agree that Lilly should run a custodial search for Dalton.  It is not clear from the briefing whether in fact that search has completed and if all responsive documents have been produced.  To the extent any responsive documents from Dalton remain outstanding, Lilly must produce those documents.

Similarly, in relation to Hertenstein, Lilly's sur-reply states that Hertenstein's involvement in anything related to PWL spanned a window of a few short days and Lilly has already collected and produced all of his responsive documents from that window.  [Filing No. 91, at ECF p. 4.] PWL's request for further documents from this individual is granted in part such that Lilly must generate a hit report using PWL's proposed limited search terms, described in more detail below, dating back to September 1, 2023.  If it does not generate any additional responsive documents, then Lilly has nothing more to produce.  As for any remaining potential custodians, the Court leaves it to the parties to work together cooperatively and in good faith to narrow the list so that the total number of custodians that Lilly must search falls in the range of 10-15 custodians.  If the parties are unable to agree, they may submit proposed custodians, and the Court will pick them.  However, the parties are always better served by selecting their own custodians to search rather than having the Court do so.  The guidance in this order should assist the parties in this regard.

In relation to search terms, PWL indicates that Lilly unilaterally selected and ran its own search terms, without agreement from PWL, which it only disclosed after producing only 190 documents.  Results have generated false positives, false negatives, and very little else.  PWL indicates that it ran Lilly's terms, and many generated zero hits and others generated largely

irrelevant hits.  PWL provided Lilly with a list of suggested terms.  [Filing No. 72, at ECF p. 16.] However, Lilly claims those terms would generate 509,000 hits and be too burdensome because PWL demands Lilly search overbroad terms such as "FDA," "syringe," "authentic," and "Lanham."

In reply, PWL says Lilly could shorten the search timeframe of any search by about 18 months, to August 2023 as start date, because PWL did not exist sooner than that.  PWL further suggests that it has reduced the discovery burden by proposing more targeted terms and paired limiters ("PWL" or "Premier") as required by Lilly and other highly specific terms found in Lilly's investigative files, which should further reduce the volume and not generate as many false positives.  [Filing No. 87, at ECF p. 11.]  In addition, PWL takes issue with Lilly's lack of transparency regarding hit reports.  PWL notes that Lilly's response brief attached a hit report for the first time, despite PWL repeatedly requesting a comprehensive hit report.

The Court reminds the parties that they stipulated and agreed to follow an ESI protocol, which states that "[t]o the extent a Party intends to use search terms or other search parameters/limiters it shall provide that information to the Requesting Party for review and comment and the Parties shall agree on those limiters before they are used."  [Filing No. 65, at ECF p. 5.]  With this in mind, the parties must work together to reach a compromise resolution on their own, with the general principle in mind that requiring Lilly to conduct a search that generates 509,000 hits is considerably overbroad.  The parties' arguments suggest a middle ground is available.  PWL should identify the particular discovery request that the custodial documents should be responsive to, and the parties should work together to determine a reasonable search inquiry for that custodian in relation to the request.  If they are unable to do so,

15

the parties may submit proposed search terms for the Court to decide the terms that must be searched.

## IV.    Conclusion

For these reasons, PWL's motion to compel is granted in part and denied in part. [Filing No. 71.] This discovery dispute, while unfortunate, is understandable. Accordingly, all requests for expenses and attorneys' fees are denied. Lilly shall provide the updated responses required by this order within 14 days.

Date: 6/10/2026

_____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

Jeremy King
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022